855 So.2d 939 (2003)
STATE of Louisiana, Appellee,
v.
Richmond J. BROCK, Appellant.
No. 37,487-KA.
Court of Appeals of Louisiana, Second Circuit.
September 26, 2003.
*940 Louisiana Appellate Project, by Peggy J. Sullivan, Monroe, for Appellant.
Robert W. Levy, District Attorney, John L. Sheehan, Assistant District Attorney, for Appellee.
Before BROWN, MOORE and TRAYLOR (Pro Tempore), JJ.
MOORE, J.
A jury convicted the defendant of aggravated burglary, a violation of La. R.S. 14:60 punishable by imprisonment at hard labor for not less than one nor more than thirty years, and second degree kidnapping, a violation of La. R.S. 14:44.1 punishable by imprisonment not less than two nor more than forty years, the first two of which shall be without benefit of parole, probation or suspension of sentence. Defendant received the maximum sentence of thirty and forty years for each crime to be served concurrently and without benefits during the first two years of the sentence. He now appeals alleging that the evidence was insufficient to support the convictions, and that the sentences are excessive. We affirm the convictions and sentences.

FACTS
The seventy-four-year-old victim, Mrs. Faye Rockett, was awakened at her home in Lillie, Louisiana, in the early morning *941 hours of April 9, 2000 by her dog barking and the crash of her back bedroom door being broken down. She went into the living room of her home, which was illuminated by a 60-watt lamp as well as light from an above-the-sink fluorescent light, where she encountered a man she later identified at trial as the defendant, Richmond Brock, a/k/a "Millie." The defendant grabbed Mrs. Rockett, put his hands over her face and twisted her head as though he were trying to break her neck. He demanded money while struggling with the victim. She directed him to her purse. During this time, Mrs. Rockett saw another man enter the room who was later identified as Antonio Johnson.
The defendant twisted the victim's wedding ring and dinner ring from her hands and took $120 from her billfold. He forced Mrs. Rockett out of the house and into the back seat of her own car. He got into the back seat with her while Johnson drove. About ten minutes later, Johnson pulled the vehicle over to the side of a gravel road, and the defendant pulled Mrs. Rockett out of the car, struck her in the head with a metal flashlight and pushed her into the roadside ditch. The defendant and his accomplice drove off in the vehicle. The vehicle was subsequently found in El Dorado, Arkansas.
Mrs. Rockett got out of the ditch and walked three miles in the near-freezing temperature until she came to a house and cried for help. The residents of the home assisted her and contacted the Union Parish Sheriff's Office. Mrs. Rockett spent two days in the hospital receiving treatment for her injuries.
After an investigation, the defendant was arrested and charged with aggravated burglary and second degree kidnapping. Near midnight on the night the offense was committed, the defendant and Antonio Johnson went to defendant's parent's home, which was located approximately one mile from the victim's home. The defendant had previously been to the victim's home, having delivered firewood to Mrs. Rockett one month prior to the crime, although Mrs. Rockett did not make this connection until after criminal proceedings against the defendant had begun. At trial, Mrs. Rockett and Antonio Johnson identified the defendant as the assailant and perpetrator of the burglary and kidnapping. Although the defendant claimed he was misidentified by Mrs. Rockett and Johnson was lying, the jury returned a verdict of guilty to both charges.
The court sentenced the defendant to the maximum sentence of thirty years for the aggravated burglary conviction and forty years for the second degree kidnapping conviction, the first two years of the sentence. The sentences were to be served concurrently. This appeal followed.

DISCUSSION
Defendant's first assignment of error alleges that the evidence was insufficient to support the convictions against him for aggravated burglary and second degree kidnapping. Specifically, he contends that he was not involved in this crime and that this is a case of misidentification.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687, writs denied, XXXX-XXXX (La.10/26/01), 799 So.2d 1150, *942 2001-2087 (La.4/19/02), 813 So.2d 424. This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App.2d Cir.4/12/96), 677 So.2d 1008 (on rehearing), writ denied, 96-1807 (La.2/21/97), 688 So.2d 520. Positive identification by only one witness may be sufficient to support a defendant's conviction. State v. Davis, 27,961 (La. App.2d Cir.4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12; State v. Miller, 561 So.2d 892 (La.App. 2d Cir.), writ denied, 566 So.2d 983 (La.1990).
In this case, defendant does not contend that the elements of the crimes have not been proven. Rather, he argues that he is not the person who committed the crime. Defendant contends that the inconsistencies in Mrs. Rockett's statements, her description of the perpetrator, and the lack of credibility of Antonio Johnson's testimony render the state's evidence that he committed the crimes against the victim insufficient to support the convictions. Since the insufficient evidence claim is that the defendant was misidentified as the perpetrator of these crimes, the question is whether the state negated any reasonable probability of misidentification. Jackson, supra and Powell, supra,
To support his claim, defendant argues that Mrs. Rockett made inconsistent statements identifying her attacker, first stating he was a white male, and later stating that he was a light-skinned African-American male. Left in the ditch by the perpetrators, Mrs. Rockett walked three miles to a residence and obtained assistance from the residents therein. One of the residents, Carol Phillips, made a 911 emergency call to the Union Parish Sheriff's Office and reported to the dispatcher that Mrs. Rockett had been beaten by a white male and black male at her residence, and the two men had taken her 1999 Malibu automobile. Later that day, Mrs. Rockett was interviewed by detective Todd Gilbert, the principal investigative officer in the case. Detective Gilbert stated in his report and at trial that Mrs. Rockett said *943 that her assailant could have been a light-skinned African-American male. At trial, Mrs. Rockett admitted that she initially stated that her attacker was a white male, but explained that she was "traumatized" by the event, and, in the light of her living room, the defendant looked very light-skinned.
At trial, Mrs. Rockett described the assailant as a light-skinned African-American male and pointed at the defendant, who is an African-American, as her attacker. She testified that the defendant had sold her firewood one month prior to the assault, but during the assault, she did not recognize him as the same person who had sold her firewood. Mrs. Rockett did not identify the defendant as her attacker until she saw him in an orange prison suit and handcuffs at the preliminary examination.
Defendant also argues that Mrs. Rockett gave inconsistent statements regarding her attempts to bite the perpetrator's finger and whether or not she bled from any injury sustained at her home. Mrs. Rockett initially reported that she bit the assailant's finger hard enough to draw blood. However, no such marks of injury were found on the defendant when he was arrested after the crime. At trial, however, Mrs. Rockett testified that she tried to bite the assailant in the car to try to escape, but could not bite him hard enough to make him let her go.
Mrs. Rockett also initially stated that she was not bleeding while she was in her home during the crime. Johnson testified, however, that Mrs. Rockett's face was bleeding when he came in the house. At trial, contrary to her earlier statements, Mrs. Rockett stated that, in retrospect, her nose must have been bleeding in the house due to the rough treatment from the defendant.
Additionally, defendant argues that the testimony of Antonio Johnson, who pleaded guilty to second degree kidnapping and aggravated burglary in exchange for his testimony and a seven-year sentence, is simply not believable. Johnson initially denied any involvement in the incident and even denied that he was Antonio Johnson. When he was subsequently linked to the crime, he claimed he played no part in the crime, and that a white male named "Ron" was one of the offenders. Johnson ultimately admitted his complicity in the crimes and gave details of his involvement in the allocution of his plea of guilty and in his testimony at trial. However, defendant also points out some contradictions between Antonio Johnson's version and Mrs. Rockett's version of the crime. For example, Johnson stated that he did not come into the house until the defendant yelled for him to come into the house. He said that when he came in the house, the defendant had Mrs. Rockett on the floor and blood was on her face. Mrs. Rockett, however, denied that the defendant yelled anything, and she denied that she was ever on the floor. As previously stated, she also initially denied that she was bleeding while in the house, but later recanted those statements.
No fingerprints or DNA evidence linked to the defendant was found in the house or in or on Mrs. Rockett's car. There was no physical evidence linking the defendant to the crime.
On the other hand, both the defendant and Antonio Johnson testified that Ernest Lee Meadows took them to the defendant's father's house around midnight on the night of the crime. The defendant claims they separated shortly thereafter, and he walked back to Ernest Meadows' house and stayed there until approximately 3:30 a.m., at which time he left and went to "Roberta['s] house," a place to "hang out and do drugs." There he met and joined Antonio Johnson and the alleged *944 white male "Ron" in Mrs. Rockett's vehicle. Defendant admitted that he went to Mose Turner's house with Johnson and the white male, but thereafter went to Meadows' house around 5:30 a.m. or near daybreak.
We conclude that the record supports the conclusion that the state negated any reasonable probability of misidentification in order to carry its burden of proof. See State v. Powell, supra. Mrs. Rockett positively and unequivocally identified the defendant in court as the perpetrator. She had the opportunity to view the defendant during the crime in the available light in her home. Her testimony alone is sufficient to support the defendant's conviction. See State v. Davis, supra; State v. Miller, supra. Furthermore, Mrs. Rockett's account of the crime and the identity of the defendant was corroborated by the testimony of his co-defendant, Johnson, although there was some conflicting testimony regarding minor factual matters in this case. Resolution of these contradictions depends on the credibility of the witnesses and concern the weight of the evidence, not the sufficiency. See State v. Allen, supra. Additionally, we observe that the testimony of Mose Turner corroborated Johnson's testimony that he and "Millie" attempted to sell the stolen rings to him. This court accords great deference to a jury's decision to accept or reject the testimony of witnesses in whole or in part. See State v. Gilliam, 36,118 (La.App.2d Cir.08/30/02), 827 So.2d 508. Accordingly, we conclude that the evidence was sufficient to support the convictions. This assignment is therefore without merit.
In his second assignment of error, defendant argues that the sentences imposed are harsh and excessive. The defendant takes issue with the trial court's statement, while setting forth the factual basis, that the victim was left "for dead." The defendant contends that there was no evidence of that fact in the record. He concludes that the sentences are unsupported by the record and the case should be remanded for re-sentencing.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.), writ denied, 521 So.2d 1143 (La.1988).
There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, 394, writ denied, XXXX-XXXX (La.2/2/01), 783 So.2d 385; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979. In selecting a proper sentence, *945 a trial judge is not limited to considering only a defendant's prior convictions but may properly review all prior criminal activity. State v. Jackson, 612 So.2d 993 (La.App. 2d Cir.1993).
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender. State v. Grissom, 29,718 (La.App.2d Cir.8/20/97), 700 So.2d 541; State v. Walker, 573 So.2d 631 (La.App. 2d Cir.1991).
In this instance, the trial court first reviewed the factual basis for the offense. Noting that there was a significant amount of blood on her face due to being struck in the face and head, the court remarked that she was left on the side of the road for dead. We find no error in this remark. Indeed, Mrs. Rockett's description of the defendant twisting her head, choking and "working on her face" indicated that the vicious attack was intended to cause great physical harm to her and perhaps death.
The sentencing court also took into account the considerations required under La.C.Cr.P. art. 894.1, specifically finding that the defendant posed a risk as a repeat offender and was in need of correctional treatment most effectively provided by incarceration. He noted that the PSI indicated that the defendant had two prior felonies and a number of other charges. The defendant had a poor record on probation.
The court made findings concerning the aggravating circumstances, including a finding that the defendant's conduct was particularly cruel to Mrs. Rockett. The defendant should have known that Mrs. Rockett was particularly vulnerable due to her age. He used actual violence on the victim. Finally, the court noted that this was the defendant's third felony, and he had a substantial criminal record as noted in the PSI.
The court found no mitigating circumstances applicable in this case.
Considering these factors, the court imposed the maximum sentences in this case: thirty years for the aggravated burglary and forty years for the second degree kidnapping conviction, the first two of which will be without benefit. The court ordered the sentences to be served concurrently.
Thus, the record clearly shows an adequate, and accurate, factual basis for the sentences imposed in compliance with La. C.Cr.P. art. 894.1, and this record supports the trial court's imposition of maximum sentences for the defendant's convictions of aggravated burglary and second degree kidnapping, as these crimes were indeed the most serious violation of the offenses by the worst type of offender. State v. Grissom, supra; State v. Walker, supra. When the crimes and the defendant's punishments are viewed in light of the harm done to society by violent crimes against the elderly, the defendant's sentences do not shock our sense of justice. State v. Hogan, supra; State v. Bradford, supra.
*946 Accordingly, we find that the sentences imposed are appropriate in this instance.

CONCLUSION
For these reasons, defendant's convictions and sentences are affirmed.
AFFIRMED.