STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 07-193

STATE OF LOUISIANA

VERSUS

BRANDON J. OFFICE

**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 69156
HONORABLE JOHN C. FORD, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Billy Howard Ezell, Judges.

AFFIRMED.

William E. Tilley
**District Attorney - Thirtieth Judicial District Court**
**P.O. Box 1188**
**Leesville, LA 71496-1188**
**(337) 239-2008**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**Elvin Clemence Fontenot, Jr.**
**Attorney at Law**
**110 East Texas Street**
**Leesville, LA 71446**
**(337) 239-2684**
**Counsel for Defendant/Appellant:**
**Brandon J. Office**

**Terry Wayne Lambright**
**Attorney at Law**
**100 S. Third Street, Suite A**
**Leesville, LA 71446**
**(337) 239-6557**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**EZELL, JUDGE.**

On November 22, 2005, the Vernon Parish District Attorney's Office filed a bill of information charging Defendant, Brandon J. Office, with one count of armed robbery, in violation of La.R.S. 14:64, and one count of aggravated kidnapping, in violation of La.R.S. 14:44. Subsequently, Defendant waived his right to a jury trial. On April 11, 2006, the State amended the second count to second degree kidnapping, a violation of La.R.S. 14:44.1. On the same date, the court heard evidence and found Defendant guilty on both counts.

Defendant appeared for sentencing on November 28, 2006. The court sentenced him to forty years at hard labor for armed robbery and forty years at hard labor for second degree kidnapping; the first two years of the latter sentence are to be served without benefit of parole, probation, or suspension of sentence. The sentences are to run concurrently with one another. The court denied Defendant's motion to reconsider the sentence.

Defendant now appeals to this court, assigning three errors. We find the convictions and sentences should be affirmed.

**FACTS**

The victim, Antonio Jordan, was with friends in a Leesville diner at approximately 1:00 a.m. on July 1, 2005. As Jordan was leaving the diner, Defendant approached him and asked him about his 1985 Buick, which was for sale. As the two men discussed the car, the victim's friends left in other vehicles. Defendant had an associate nearby, sitting in a white Ford Taurus.[1] Defendant asked to test drive the car, but the victim refused. Defendant walked over to the Taurus, and when he returned, he forced the victim into the passenger seat of the car. Although he did not

---

[1] The record repeatedly refers to this car as a "Tarsus."

1

see a gun at that time, the victim complied because he felt a gun digging into his side. Defendant then got in also, and drove north on Highway 171. The driver in the white Taurus followed.

After they got into the Buick, the victim saw Defendant's gun. Once the cars crossed the intersection of Highway 28, they pulled over to the right shoulder of the road. Testimony indicated the area north of the intersection is not well lit. Defendant pointed his gun at the victim and ordered him out of the car. The victim attempted to punch Defendant, who evaded the blow. The victim jumped out of the car and heard a gunshot behind him. Defendant then resumed his northbound route in the stolen Buick, and the driver in the Taurus followed him.

Later, after a Many police officer tried to apprehend him, Defendant left the stolen car and rendezvoused with his associate in the white Taurus. Police apprehended Defendant further north, after a car chase.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, Defendant argues the trial court erred by denying his motion for post verdict judgment of acquittal. The State argues such a motion was procedurally improper in a bench trial. We find the propriety of the motion need not be addressed. Defendant's current argument clearly challenges the sufficiency of the evidence, an issue this court commonly reviews without requiring any motion below to preserve it.

The analysis for such sufficiency claims is well-settled:

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d

2

1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

As noted earlier, Defendant was convicted of armed robbery, which is defined by La.R.S. 14:64(A): "Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."

He was also convicted of second degree kidnapping, which is defined by La.R.S. 14:44.1(A)(2): "Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is: . . . Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony[.]" Subsection B of the statue states, in pertinent part: "The forcible seizing and carrying of any person from one place to another[.]"

Defendant argues the State failed to prove that he had a gun at the time he ordered the victim into the Buick. We note that in his statement to police, Defendant admitted stealing the car but denied using a weapon. Thus, identity is not at issue in the present analysis.

The victim acknowledged that he did not initially see the gun; however, he testified that he could feel it poking him in the ribs. Further, the victim testified that once in the car, he saw that Defendant had the gun between his leg and the "console."[2] As noted earlier, after they crossed the intersection of Highway 28,

---

[2]Although the victim repeatedly referred to the "console," his description of it suggests he was referring to a fold-down armrest for the front seat.

Defendant pulled over, as did his associate, who was following them in the white Taurus. The victim testified that Defendant then pointed the gun at him and ordered him out of the car. After trying, and failing, to punch Defendant, the victim jumped out of the car. He heard a gunshot, then the two cars sped off.

Thus, the victim's testimony that he felt the gun poking his ribs provided direct evidence that Defendant had the gun at the time he ordered the victim into the car. This direct evidence was corroborated by his testimony that he actually saw the gun once they were inside the car. The latter testimony provided strong circumstantial evidence that Defendant had the gun at the time of the initial abduction.

This aspect of the State's case was further bolstered by the testimony of the police officers who later encountered Defendant. At approximately 2:00 a.m., Jami Dale Hensley of the Many Police Department attempted to intercept a car speeding northbound on Highway 171. After a short chase, the car came to a stop, and the driver bailed out and ran away with an object in his hands. We note that Henley was unable to identify the driver as Defendant, and also was not certain that the object he saw in the escaping man's hand was a gun. However, he testified that he subsequently heard police radio traffic that indicated the same suspect had gotten into a white vehicle.

Sabine Parish Deputy Larry Rutherford also testified that he heard radio traffic indicating the suspect initially pursued by Officer Henley had gotten into a white Ford Taurus. Between 1:00 a.m. and 2:00 a.m. on July 1, Rutherford was southbound on Highway 171, traveling from Zwolle to Many when he heard the radio call. Approximately two miles north of Many, he saw a white Taurus traveling northbound. When Rutherford got behind it and activated his overhead lights, it pulled over. The deputy arrested the driver without incident, but he saw someone

4

climb from the back seat into the front seat. This second man got behind the steering wheel; when Rutherford approached, the suspect produced a gun. He then drove north on Highway 171; Rutherford tried but failed to shoot out the tires. The deputy put the other suspect in his car and gave chase to the Taurus. When he caught up to it ten minutes later, it was about three miles south of a town called Converse and had already been disabled by other officers.

Another deputy, David Self, took up the chase further north on Highway 171; he testified that during the chase, the driver of the Taurus stuck a gun out of the window and appeared to fire back at him. Self could not state "a hundred percent" that the driver actually fired the weapon, because of debris, smoke, and sparks that poured from the Taurus after it blew three tires going over a police spike-strip. However, Self testified he could clearly see the gun. When the suspect finally stopped the Taurus and ran to nearby woods, he was still holding a gun, according to Self.

We submit that the victim's testimony, corroborated by the testimonies of the various police officers, provided sufficient evidence that Defendant used a gun to force him into the Buick. Further, Defendant subsequently used the gun to facilitate the armed robbery at issue, in later stages of the offense.

Also, we note the supreme court has stated:

In *State v. Meyers*, 620 So.2d 1160 (La.1993) this Court distinguished the crimes of theft and robbery. "The purpose of the force or intimidation element of robbery is to distinguish, by imposition of a more severe penalty, those takings which pose a greater risk to the victim." *Meyers*, 620 So.2d at 1163. Accordingly, "the force or intimidation element of robbery is satisfied by evidence that force or intimidation directly related to the taking occurred in the course of completing the crime." *Meyers*, 620 So.2d at 1163. It is immaterial whether the "taking of anything of value" occurs immediately before or after the "use of force or intimidation." The element of danger is present notwithstanding the order of these events.

5

*State v. Goodley*, 01-77, p. 9 (La. 6/21/02), 820 So.2d 478, 484.

Under *Goodley* and *Meyers*, Defendant clearly employed the gun as a means of force or intimidation that facilitated the robbery. Pursuant to the jurisprudence cited, the question of whether he used the gun to force the victim into the car would be superfluous, as he clearly used it later to force the victim out of the car, so that he could take full possession of it.

For the reasons discussed, the assignment lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, Defendant argues the trial court erred by denying his motion for new trial. He notes that it is difficult to discern whether the trial court applied the "thirteenth juror" standard to its analysis, since the court denied the motion without reasons.

However, as the State points out, the true thrust of Defendant's argument is identical to his argument in the first assignment of error, i.e., that the evidence adduced against him was insufficient to support the conviction. His motion in the trial court made the same argument. This argument was addressed in the previous assignment and was found to lack merit.

Defendant's original motion was based on the following language from La.Code Crim.P. art. 851:

> The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
>
> > The court, on motion of the defendant, shall grant a new trial whenever:
> > (1) The verdict is contrary to the law and the evidence;
> > (2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error[.]

6

This court has previously explained:

> This court has held when a trial court reviews a motion for new trial, the appropriate standard for re-weighing the evidence is the "thirteenth juror" standard. *State v. King*, 96-1303, pp. 5-6 (La.App. 3 Cir. 4/2/97), 692 So.2d 1296, 1299, *citing State v. Long*, 590 So.2d 694 (La.App. 3 Cir.1991).

> . . . .

> In *State v. Snyder*, 98-1078, p. 37 (La.4/14/99), 750 So.2d 832, 859, n. 21 (alteration in original), the supreme court stated:

>> In the instant case, the constitutional issue of sufficiency is treated in assignment of error number 1 because the denial of a motion for new trial based upon La.C.Cr.P. art. 851(1) is not subject to review on appeal. *State v. Skelton*, 340 So.2d 256, 259 (La.1976) ("[W]e have uniformly held that a bill of exceptions reserved to the refusal of the trial judge to grant a motion for a new trial based on Article 851(1), relative to sufficiency of the evidence presents nothing for our review.") (citations omitted); *State v. Bartley*, 329 So.2d 431, 433 (La.1976) ("It is well established in Louisiana that an assignment of error reserved to the denial of a motion for a new trial alleging that the verdict is contrary to the law and the evidence presents nothing for appellate review.") (citations omitted).

> As the trial court used the correct standard of reviewing the motion for new trial, this assignment of error is not reviewable pursuant to La.Code Crim.P. art. 858 and *State v. Snyder*.

> Defendant argues in the alternative, the trial court should have granted his motion for new trial under La.Code Crim.P. art. 851(5). La.Code Crim.P. art. 851(5) states, in pertinent part, "The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right."

> This court has routinely held that denial of a motion for new trial to serve the ends of justice is not subject to review upon appeal. *State v. Jason*, 01-1428, p. 9 (La.App. 3 Cir. 7/10/02), 820 So.2d 1286, 1292, *citing State v. Prudhomme*, 532 So.2d 234 (La.App. 3 Cir.1988), *writ denied*, 541 So.2d 871 (La.1989).

*State v. Giles*, 04-359, pp. 22-23 (La.App. 3 Cir. 10/6/04) 884 So.2d 1233, 1247-48,

*writ denied*, 04-2756 (La. 3/11/05), 896 So.2d 62.

7

Further, although it is not clear what standard the trial court applied, this court can presume the trial court applied the proper standard. *State v. Callegari*, 00-437, (La.App. 3 Cir. 11/2/00), 773 So.2d 806, *writ denied*, 00-3338 (La. 11/9/01), 801 So.2d 362 (*citing State v. Washington*, 614 So.2d 242 (La.App. 3 Cir.), *writ denied*, 619 So.2d 575 (La.1993)).[3] Also, Defendant does not argue that any particular ruling by the trial court resulted in prejudicial error, for purposes of his motion for new trial and La.Code Crim.P. art. 851(2).

Thus, pursuant to the jurisprudence, there is nothing for this court to review. Further, the substantive questions raised under this assignment were explored during the *Jackson* review in the previous assignment of error. For the reasons discussed, this assignment lacks merit.

### ASSIGNMENT OF ERROR NUMBER THREE

In his final assignment of error, Defendant alleges that his forty-year sentences are excessive. Similarly, his motion to reconsider in the trial court contained only a bare claim of excessiveness.

The sentencing range for armed robbery is ten to ninety-nine years. La.R.S. 14:64(B). Thus, Defendant received a midrange sentence for that crime. The sentencing range for second degree kidnapping is five to forty years; thus, Defendant received the maximum sentence for this offense. La.R.S. 14:44.1(C).

The analysis for excessive-sentence claims is well-settled:

> [Louisiana Constitution Article I], § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless

---

[3]*See also State v. Campbell*, 94-1140 (La.App. 3 Cir. 3/13/96), 673 So.2d 1061, *writ denied*, 96-1785 (La. 1/10/97), 685 So.2d 140, *reversed on other grounds*, 523 U.S. 392, 118 S.Ct. 1419 (1998).

imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331(second alteration in original).

In further refining the analysis, this court has stated:

[A]n appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

Pursuant to the first factor listed in *Smith*, the offenses at issue were violent in nature; as for the second factor, the nature of the offender, Defendant has a history of violent crime.

At sentencing, the following colloquy occurred:

BY MR. STRIDER:

Your Honor, may we call Mr. Office? May we call Mr. Office?

BY THE COURT:

You may.

BY MR. STRIDER:

Your Honor, this is Brandon Office, docket Number 69,156 here for sentencing today on an armed robbery and a second degree kidnapping.

BY MR. FONTENOT:

Your Honor, for the record, my name is Elvin Fontenot, I'm retained counsel for Mr. Office. Your Honor, before this sentencing takes place this morning I had filed a motion for a sentencing hearing and anticipated some testimony from Mr. Office's parents, but they are not here and were unable to be here at this time. So, we're going to move to dismiss that request for sentencing hearing, Your Honor.

BY THE COURT:

Very well. This is Number 69,156, State of Louisiana versus Brandon Office, Brandon Jermane Office. The offenses are armed robbery and second degree kidnapping. The penalty for armed robbery is 99 years without benefit of parole, probation or suspension of sentence. Second degree kidnapping is five to 40 years, two years of which is without suspension of sentence or probation or parole. The facts are that this defendant here drove the victim's vehicle with the victim in it under the guise of wanting to buy the victim's car and got him down the road, pulled out a gun and ordered him out of the car. Then he took off down the road, the police got after him and he got into a big running battle with the police up in -- he went all the way through Sabine Parish. But, this defendant was tried by the Court, a Judge trial, and found guilty on both Counts on April of this year, April 11th of this year. Does the defendant have anything to present at this time, Mr. Fontenot?

BY MR. FONTENOT:

No, Your Honor.

BY THE COURT:

The Court considers the sentencing guidelines in Article 894.1, the pre-sentence report and the fact that this is this defendant's fourth felony offense. When I look at his history it appears that he has -- these are violent offenses. They're offenses where weapons were used. But, considering all of the circumstances the Court finds there is an undue risk during a period of suspended sentence or probation the defendant will commit another crime. The Court finds that a lesser sentence will deprecate the seriousness of this defendant's conduct.

It's the sentence of the Court that you serve 40 years at hard labor with the Louisiana Department of Public Safety and Corrections without benefit of probation, parole or suspension of sentence, with credit for time served since the date of your arrest.

On Count 2 you're to serve 40 years at hard labor with the Louisiana Department of Public Safety and Corrections, two years of which will be served without benefit of parole, probation or suspension of sentence with credit for time served since the date of arrest. I will make these sentences run concurrent with each other. Your sentence is subject to diminution for good behavior pursuant to Revised Statute 15:571.3. The sentence imposed was not enhanced due to any relevant provision of the law. You have 30 days within which to appeal and two years within which to file an application for post conviction relief.

BY MR. FONTENOT:

Your Honor, for the record, we wish to file a motion to reconsider sentence . . .

BY THE COURT:

Very well.

BY MR. FONTENOT:

. . . for purposes of preserving that for appeal and ask that the Court rule on that this morning, Your Honor, and that it be made part of the record.

BY THE COURT:

Very well. The Court would deny the motion to reconsider at this time.

We have obtained a copy of the presentence investigation report; as the trial court stated, it shows Defendant has a history of crimes involving firearms and that he has three prior felonies.

Regarding the third *Smith* factor, the comparison of sentences for similar offenses, we note that in *State v. Vance*, 06-452 (La.App. 5 Cir. 11/28/06), 947 So.2d 105, the court held a seventy-five-year sentence for armed robbery was not excessive. The court observed that the defendant shot at a witness who tried to follow him, hitting the witness's truck.

11

As for the jurisprudence regarding second degree kidnapping, we observe that in *State v. Moore*, 37,935 (La.App. 2 Cir. 1/28/04), 865 So.2d 227, *writ denied*, 04-507 (La. 7/2/04), 877 So.2d 142, the court held that a forty-year sentence for second degree kidnapping, in conjunction with armed robbery and attempted second degree murder, was not excessive where the victim was shot and left for dead; *State v. Brock*, 37,487( La.App. 2 Cir. 9/26/03), 855 So.2d 939, *writ denied*, 04-1036 (La. 4/1/05), 897 So.2d 590, held similarly, where the companion's offense was aggravated burglary and the victim was beaten and left for dead; in *State v. Lefeure*, 02-592 (La.App. 5 Cir. 10/29/02), 831 So.2d 398, *writ granted in part on other grounds*, 02-2924, 02-3231 (La. 10/3/03), 855 So.2d 291, the court reduced the defendant's sentences on companion charges, and rendered them concurrent, but left his forty-year sentence for second degree kidnaping intact; there does not appear to have been any particular cruelty or heinous action in *Lefeure*.

In view of the cases cited, it does not appear that the forty-year sentences are outside the norms of Louisiana jurisprudence, even though maximum sentences are usually reserved for the worst offenders. *State v. Banks*, 95-1210 (La.App. 3 Cir. 6/25/97), 699 So.2d 418. While Defendant's actions are not heinous or cruel, we note the victim testified Defendant shot at him as he exited the Buick. Thus, we suggest that, but for chance or poor aim, this could easily have been a murder case. Defendant is a career criminal who is willing to resort to violence, including the use of firearms, to accomplish his goals. Thus, we suggest the trial court did not abuse its discretion in formulating the sentences. We observe the trial court could have pronounced a much longer sentence for the armed robbery. For the reason discussed, this assignment lacks merit.

## CONCLUSION

The convictions and sentences are affirmed.

**AFFIRMED**.