312 So.2d 860 (1975)
STATE of Louisiana
v.
Ronald GEORGE.
No. 55763.
Supreme Court of Louisiana.
April 24, 1975.
Rehearing Denied May 30, 1975.
*861 Bertrand DeBlanc, Lafayette, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
The defendant, Ronald George, was charged by Bill of Information with the crime of armed robbery. He was tried, *862 found guilty, and sentenced to the Louisiana Department of Corrections to serve a term at hard labor for 25 years. Present counsel was appointed to represent defendant in this appeal and has presented three Bills of Exceptions for review.
Bill of Exceptions No. 1.
During the course of voir dire the trial court sustained a state objection to a defense question of a prospective juror. The question was, did the venireman realize that the penalty for armed robbery is ninety-nine years maximum, without benefit of parole.
Defendant urges in brief that the discretion on the part of the trial court to limit voir dire is not and should not be unlimited, and that expansive voir dire questioning should not be discouraged by trial court rulings of a delimiting nature. He argues that the pertinent question and its corresponding answer was needed so that he could intelligently exercise his peremptory challenges and challenges for cause.
We do not find the trial court's curtailment of voir dire to be prejudiced to the rights of the defendant. The function of the jury (almost exclusively) is to determine guilt or innocence, La.C.Cr.P. Art. 802; the trial court imposes sentence upon a jury finding of guilt, La.C.Cr.P. Art. 871. In State v. Blackwell, 298 So.2d 798 (La.1974) we held that it was not error for a trial court to refuse to charge the jury as to the penalty applicable to the charged crime (armed robbery in that instance).
The question whether to allow "informing" the jury (through voir dire interrogation) of the applicable penalty is one within the discretion of the trial court. We find no abuse of that discretion in this case.
Bill of Exceptions No. 2.
This bill arose during the testimony of Officer Pettus, a crucial state witness. He observed a suspicious person (the robber) leaving a Trip-L-Kwik Store in Lafayette. Upon approaching the store he was informed of the crime and gave chase, first in his car and then on foot. Giving chase on foot he came upon a man standing on the porch at 118 Alsandor Drive. That person did not testify at trial and presumably was never located or identified by the police. The officer testified that the man on the porch said he saw someone running and he "went that away." The officer continued the chase but was unable to capture the robber. The defendant was arrested shortly thereafter by another police unit in the area.
The testimony giving rise to this Bill was as follows:
"Q. Where was that man when you saw him?
A. He was standing on the porch.
Q. The porch of what?
A. The porch of 118 Alsandor Drive.
Q. Did you ascertain in any manner or method who lived at 118 Alsandor Drive?
A. No, sir.
Q. Don't you think that would be important?
A. Yes, sir.
Q. Is that statement on the District Attorney's report, that you submitted to them?
A. I don't know. I don't believe.
Q. Did you write it down at any time, that you saw a manthat he saw a man running that way?
A. Oh, yes, sir, I did. And it is on my report.
Q. On your report?
A. Yes, sir, it is.
Q. Where is your report?
MR. LEGENDRE: Your Honor, I don't know the merit of this line of *863 questioning at this time. I object to the line of questioning as being irrelevant to the report.
MR. BEARD: I think the line of questioning is very material. This man
MR. LEGENDRE: Your Honor, I won't stand still for a speech. I won't tolerate this. I apologize to the Court, I think the line of questioning is proper as to why he didn't try to find that man and his answer to that. I think that's the line of questioning.
THE COURT: I'll sustain the objection.
MR. BEARD: To which objection, Your Honor, I respectfully object, making part and parcel thereof my questioning on this subject matter, the objection and Your Honor's ruling.
THE COURT: So ordered."
Defendant argues in brief that the trial court erred in disallowing the question, "where is your report?" He protests that not allowing this question on cross-examination deprived him of the fundamental right of confrontation. He further complains that the ruling denied him the right to question the witness concerning previous statements or reports made by him which might be in conflict with the witness' testimony in the case being tried. He argues that the ruling of the court precluded further development of "this line of questioning."
We believe a fair reading of the transcript does not indicate that the trial judge did anything more than disallow a single question. We do not find that the trial judge cut off any "line of questioning."[1] And whild there may have been error in disallowing the question we do not find a substantial violation of a constitutional or statutory right (See C.Cr.P. Art. 921), particularly inasmuch as defense counsel did not bring to the attention of the court either prior to the court's ruling or subsequent, the grounds upon which the State's objection in his view was without merit. Had counsel stated even after the court's ruling his intent to pursue a line of questioning which might develop inconsistencies between the witness' testimony and previous statements or reports of the officer, we would not now be speculating as to the effect of the court's limited ruling disallowing a single question. In order to permit the trial judge to fairly rule upon objections at trial it is incumbent upon trial counsel to state reasons in support of his position.
Under the circumstances we cannot find prejudicial error and determine that this bill is without merit.
Bill of Exceptions No. 3.
Prior to the beginning of opening statements, the State advised defendant in writing in accordance with Article 768 of the La.C.Cr.P. that the State intended to introduce a confession or inculpatory statement into evidence.[2] *864 As dictated by Article 767 the State did not in the opening statement to the jury advert in any way to a confession or inculpatory statement made by the defendant. Thereafter, upon presentation of evidence, the State desisted from, neglected to, or simply chose not, to introduce any confession or inculpatory statement in evidence. During closing argument defense counsel referred to the failure of the State to introduce into evidence any confession or inculpatory statement, notwithstanding that the State had prior to opening statement notified defendant it intended to introduce such a statement. The State objected to that reference and the trial judge sustained the objection, whereupon defense counsel reserved Bill of Exceptions No. 3.
It would seem that defense counsel's calling this matter to the attention of the jury, which had theretofore heard nothing about the possible existence of a confession or inculpatory statement would not be advantageous to the defendant, even though defense counsel could advise the jury that no such statement had been introduced by the State. However, that is a tactical matter which does not concern us.
The sole legal issue is whether defense counsel was entitled to make such reference, and more particularly, whether the trial court's refusal to permit him to do so constitutes reversible error. We find no error in the Court's ruling.
The requirements of Article 766 through 768, shielding from the jury knowledge of the possible existence of a confession or inculpatory statement until determined admissible by the trial court and introduced by the State, is generally to the advantage of the defendant. The corresponding imposition upon the State that if they have an intention, or possible intention, to introduce such a statement, they be required to advise defendant in writing of same prior to the beginning of the State's opening statement, does not impose any obligation upon the State to introduce or attempt to introduce such a statement. And while there is nothing especially unfair about defense counsel advising the jury of these historical facts, it is equally apparent to us that the trial judge's ruling preventing the comment or reference during closing argument is not erroneous.
Furthermore, Article 774 restricts the scope of argument to "evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." The defendant's argument including comment that the State had earlier complied with Article 768 and did not thereafter introduce a confession or inculpatory statement, is not specifically sanctioned by Article 774.
This bill has no merit.
For the above assigned reasons, the conviction and sentence are affirmed.
SANDERS, C.J., concurs with written reasons.
SUMMERS, J., concurs and will assign reasons.
DIXON and BARHAM, JJ., dissent.
SANDERS, Chief Justice (concurring).
We have previously held that it is not error for the trial judge to refuse to instruct the jury as to sentence regulations such as minimum terms, maximum terms, probation, and parole. State v. Blackwell, La., 298 So.2d 798 (1973); State v. Andrus, 250 La. 765, 199 So.2d 867 (1967); State v. Green, 244 La. 80, 150 So.2d 571 (1963); State v. Morris, 222 La. 480, 62 So.2d 649 (1952).
We have likewise held that sentence regulations form no part of the applicable law to be argued by counsel to the jury. State v. Lewis, La., 296 So.2d 824 (1974); State v. Harris, 258 La. 720, 247 So.2d 847 (1971).
*865 The initial question in the present case is whether the trial judge was correct in sustaining the State's objection to the following defense question on Voir dire examination of a prospective juror: Do you realize that the penalty for armed robbery is ninety-nine years maximum without benefit of parole?
As I view the question, it related to the prospective juror's knowledge of sentencing regulations. Such legal knowledge is foreign to his duty as a juror. We have consistently held that a juror in an armed robbery prosecution has no sentencing function. Hence, the ruling of the trial judge is correct.
For the reasons assigned, I respectfully concur in the decree.
SUMMERS, Justice (concurring).
I concur for the reasons assigned by the Chief Justice.
NOTES
[1] Reference to "line of questioning" is found in the prosecutor's comments, not in the judge's ruling.
[2] Art. 766. Opening statement by state; scope

The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge.
Art. 767. Same; prohibition against adverting to confessions
The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant.
Art. 768. Same; use of confession or inculpatory statement; notice to defendant prior to opening statement
If the state intends to introduce a confession or inculpatory statement in evidence, it shall so adrise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible evidence. (Emphasis provided)