339 So.2d 829 (1976)
STATE of Louisiana
v.
Mark SMITH.
No. 58170.
Supreme Court of Louisiana.
November 8, 1976.
Rehearing Denied December 10, 1976.
*830 Remy F. Gross, II, John L. Diasselliss, III, La.Place, Julian R. Murray, Jr., Murray, Murray, Ellis & Braden, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Melvin P. Barre, Dist. Atty., Roland J. St. Martin, Asst. Dist. Atty., Abbott J. Reeves, Director, Research and Appeals Div., Parish of Jefferson, Metairie, for plaintiff-appellee.
DENNIS, Justice.
Defendant, Mark Smith, was indicted on February 10, 1975 with first degree murder, a violation of La.R.S. 14:30. Defendant entered a plea of not guilty and not guilty by reason of insanity. He was subsequently tried, convicted, and sentenced to death. He now appeals, relying on five assigned errors and additional errors allegedly patent on the face of the record for reversal of his conviction and sentence.
At approximately 7:00 a.m., Sunday, January 26, 1975, Mark Smith, David Howell and Charles Haynes, who were traveling through Louisiana in a stolen car, ran a red light in La.Place. Police stopped the vehicle, and upon discovering that the driver, Haynes, had an out-of-state driver's license and no registration certificate for the automobile, escorted all three to the sheriff's office. Haynes was unable to post the required $94.00 bond and was detained. Defendant and Howell were allowed to leave, but defendant assured Haynes that they would try to get the money necessary for his release. At approximately 11:00 a.m., *831 defendant and Howell arrived at the Historian Motel, several miles from La.Place on Airline Highway, and obtained the manager's permission to park their car in the motel lot in order to get some sleep since they could not afford a room. As a precaution, the manager took down the automobile's license number, and at 1:30 p.m. she noticed that the car was gone. Defendant was next seen at approximately 7:30 p.m. on the patio of Dad's Drive-In, a restaurant located next door to Tassin's Texaco Station. Employees of the restaurant inquired of defendant if he wanted to eat but he responded in the negative. They closed the drive-in shortly thereafter, noticing as they left that the Texaco station appeared to be open. A neighbor of Tassin who had been visiting with him at the station departed at around 8:15 p.m. as Tassin was preparing to close. At approximately 8:30 p.m. defendant and Howell returned to the Historian Motel, walking hurriedly into the office. Defendant kept his left hand in his jacket pocket which was visibly protruding; in his right hand he held a number of small bills. He asked the manager of the motel to exchange the small bills for larger ones, explaining that the money was needed to get a friend out of jail. Howell remained outside the door urging defendant to leave. When the manager's husband and a motel quest entered the office, defendant and Howell left. Thereupon, the manager telephoned the police to report this incident and gave them the license number of the car. When defendant and Howell arrived at the sheriff's office they were arrested for theft of the automobile. A check with the National Crime Information Center had revealed that the car was stolen. It was discovered across the street, and a search of the glove compartment produced a RoiTan cigar box resembling that in which Tassin had stored his money and a .22 caliber revolver containing live ammunition in all cylinders but one, which was empty. Later that evening, police discovered Tassin's body lying near his desk in the darkened service station. He had been fatally shot once through the chest and was still clutching a pen or pencil in his right hand in a writing position. The coroner examined him at 11:00 p.m. and estimated that he had been dead for not more than four hours. Subsequently, a .22 caliber bullet was discovered on the floor, and a firearms identification expert testified that it had been fired from the gun recovered from defendant's automobile. The expert further stated that the gun had a hard trigger pull.
ASSIGNMENT OF ERROR NO. 1
This assignment relates to the trial court's denial of defendant's motion to suppress a confession given to members of the St. John the Baptist Sheriff's Office.
Following defendant's arrest for car theft, sheriff's deputies questioned him about the automobile and about a service station robbery which had occurred earlier that day in Baton Rouge. Defendant denied any involvement in that crime but confessed to having robbed and shot Tassin, and signed a written statement to that effect.
Subsequently, defendant alleged in a motion to suppress that he had not been timely informed of his Miranda rights and that the confession had been coerced. The trial judge concluded after a hearing that the evidence did not support defendant's allegations and denied the motion. Prior to trial the district attorney informed defense counsel by written notice in accordance with La.Code of Criminal Procedure article 768, that the State intended to use defendant's confession at trial.
Because of the seriously incriminating nature of the confession, defense counsel made a statement to the jury at the commencement of trial, admitting that defendant had shot Tassin during the course of a robbery but asserting that the gun had fired accidentally in a struggle initiated by Tassin. Defense counsel informed the jury that under these facts, to which defendant would testify, defendant could be convicted of second, but not first, degree murder. During the presentation of its case in chief, however, the State did not introduce the confession, contrary to the written notice *832 given defendant in accordance with La. Code of Criminal Procedure article 768. Since defense counsel believed the State had not carried its burden of proving either first or second degree murder, and because he anticipated the prosecution would attempt to introduce the confession in rebuttal, the defense decided to rest its case upon the presumption of innocence and without testimony by the defendant. Although the jury was instructed that statements and arguments by counsel were not to be considered as evidence, and even though it was instructed that the defendant was not required to testify, defense counsel argues that the foregoing sequence of events worked to the great prejudice of his client. Due to the fact that all of these developments stemmed from the confession of the defendant, which he contends was unlawfully obtained and should have been suppressed, defendant argues the conviction and sentence should be reversed.
As a general rule, the propriety of denying a motion to suppress evidence becomes a moot issue if the evidence is not introduced at trial. State v. Monk, 315 So.2d 727 (La.1975); State v. Jacobs, 281 So.2d 713 (La.1973); State v. Nelson, 261 La. 153, 259 So.2d 46 (1972). Defendant contends, however, that because of the unusual sequence of events in this case, the general rule should not apply. We cannot agree. The disadvantage, if any, suffered by defendant in the trial of the case, resulted from legitimate strategy and counter-strategy employed by prosecution and defense counsel, and not from any basically unfair procedure. La.Code of Criminal Procedure article 768 requires the State to forewarn the defendant prior to its opening statement that it intends to introduce a confession in evidence, but it does not prevent it from deciding against introduction of the confession during trial. State v. George, 312 So.2d 860 (La.1975). The defendant may make an opening statement if he chooses, but none is required of him by law. La.C.CR.P. art. 765. Furthermore, defendant is entitled to make a closing argument to the jury. Id. Thus, defense counsel was not compelled to make an opening statement implicating the defendant in the killing of Mr. Tassin. Nor was the State guilty of illegal or unfair conduct in failing to introduce the confession. Defense counsel undoubtedly was aware that the trial could develop as it did, but, nevertheless, chose to approach the jury with a plea for conviction of a lesser included offense in his opening statement, rather than waiting until his closing argument. In view of the overwhelming evidence of defendant's complicity in the robbery-murder apart from his confession, this strategy might not have been unreasonable even if the confession had been suppressed. In any event, in this appeal we are not called upon to pass judgment upon decisions of trial counsel, which may be complained of through a writ of habeas corpus alleging ineffective assistance of counsel. See, State v. Marcell, 320 So.2d 195 (La.1975). Rather, we must determine whether defendant was denied a fair trial by action of the prosecution and the trial court when combined with our rule of law that the question of whether evidence should have been suppressed prior to trial becomes a moot issue if the evidence is not introduced at trial. Under the circumstances of this case we conclude defendant was not denied due process or basic fairness by the events complained of in this assignment.
This assignment lacks merit.
ASSIGNMENTS OF ERROR NOS. 2, 3 and 5
Defendant complains of the trial court's denial of his motions for a directed verdict requested at the close of the State's evidence and for a new trial. Both motions asserted that the State had failed to prove all essential elements of the crime of first degree murder, and defendant contends that the court erred in refusing to rule that the jury had convicted on insufficient evidence.
Prior to the trial of this case in January, 1976, the statute relative to directed verdicts was amended to provide that the trial court may direct a verdict of not guilty in *833 judge trials only. La.Code of Criminal Procedure article 778, amended by Acts 1975, No. 527, § 1 (effective September 12, 1975). However, defendant contends that the prior law permitting directed verdicts in jury trials accorded substantive rights, and argues that since it was in effect at the time of the offense it should have been given effect at the trial. There may be merit to this contention. However, we shall pretermit discussion of the constitutional issue because we find that the evidence summarized at the beginning of this opinion supported the denial of a directed verdict by the trial judge. The facts that the murder weapon was difficult to fire and that the victim was holding a pen when he died tended to refute defendant's theory that the shooting was accidental. Furthermore, the sum total of the evidence indicated that if defendant were not directly responsible for the killing, his participation in the crime was sufficient to make him guilty as a principal. La.R.S. 14:24; State v. Willis, 322 So.2d 169 (La. 1975); State v. Broussard, 312 So.2d 325 (La.1975). Additionally, defendant's presence near the scene of the crime shortly before it occurred, and his control of the money shortly after the robbery were facts from which the jury might have concluded that defendant himself committed the fatal act.
Defendant additionally argues that to postpone consideration of the sufficiency of the evidence until the conclusion of the trial abridges the defendant's privilege against self-incrimination since evidence presented by the defense which cures possible deficiencies in the State's case may be weighed in the balance. This argument was considered at length and narrowly rejected by a four member majority of this Court in State v. Smith, 332 So.2d 773 (La. 1976). The writer of the opinion in the instant case continues to disagree with the majority opinion in Smith, but recognizes that it is dispositive of this issue.
Defendant challenges the court's denial of his motion for a new trial, alleging that the trial judge did not decide whether the evidence supported the verdict or alternatively that his conclusion in the State's favor was erroneous. In its oral reasons for denying the motion, the trial court clearly demonstrated that it had evaluated the sufficiency of the evidence: "I must only satisfy myself that this jury had sufficient evidence to arrive at [the] conclusion that they did arrive at. This verdict is not unsupported by the evidence." Defendant claims, however, that the court erred in finding that the evidence established that he harbored the specific intent to kill Tassin or even that he committed the robbery-murder.
Where, as here, the State's case depends upon circumstantial evidence the rule is: "* * * assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La.R.S. 15:438. We have held that the issue of whether every reasonable hypothesis of innocence had been excluded presents a question of law. State v. Pryor, 306 So.2d 675 (La.1975); State v. Williams, 310 So.2d 513 (La.1975). Because of the evidence summarized at the beginning of this opinion and discussed again above in relation to the motion for directed verdict we conclude that, if the jury assumed every fact to be proved that the evidence tended to prove, it would have been justified in concluding that every reasonable hypothesis of innocence had been excluded.
Although we are troubled by the possibility that the jury disregarded the instructions of defense counsel and the court that arguments of counsel are not to be considered as evidence and weighed defense counsel's admissions of defendant's complicity in the crime against him, our consideration of this matter is foreclosed by our conclusion that there was ample evidence properly before the jury to support its verdict.
These assignments lack merit.
ASSIGNMENT OF ERROR NO. 4
Defendant urges his second ground for the motion for a new trial: that remarks *834 in the State's closing arguments were made solely to appeal to prejudice and to mislead the jury. Only one of the allegedly prejudicial remarks was objected to; the remainder went unchallenged at the time. In each case, defense counsel's failure to timely request an admonition or move for a mistrial constituted a waiver of the alleged error. State v. Marcell, supra; State v. Knight, 323 So.2d 765 (La.1975).
La.Code of Criminal Procedure article 841 provides that an error cannot be availed of after the verdict unless it was objected to at the time of the occurrence. The articles relative to prejudicial remarks, La.Code of Criminal Procedure articles 770 and 771, require a contemporaneous motion for a mistrial or request for an admonition. These rules promote judicial economy by preventing a defendant from gambling for a favorable verdict and then, upon conviction, resorting to appeal on errors which either could have been corrected at the time or should have put an immediate halt to the proceedings. See, State v. Marcell, supra.
Defendant's sole objection was entered when the prosecutor commented: "again, there's a reason for the emphasis on second degree murder." Following the objection, the jury was removed from the courtroom, and the judge instructed counsel not to comment on penalties. After the jury was returned, the State resumed its argument without again touching upon this area. We find that the corrective measures taken by the court were sufficient to avoid any prejudice to defendant and that because the State was prevented from completing its statement no admonition would have been required had it been requested.
This assignment is without merit.
Defendant advances a number of additional arguments relating to errors which were not included in defendant's assignments of error but which are said to be discoverable from an inspection of the pleadings and proceedings and hence, reviewable by this Court under La.Code of Criminal Procedure article 920.
First, he complains of the trial court's failure to instruct the jury on the law applicable to a defense of insanity which was required by defendant's plea of not guilty and not guilty by reason of insanity, or the definition of armed robbery, an essential element of the felony-murder with which defendant was charged.
Pursuant to a request by defense counsel, the trial court supplied him with a written copy of its proposed instructions to the jury. At trial, defense counsel expressly approved the court's instructions, stating,
"* * * [W]e are satisfied with the court's charges as presented with the exception of our special requested charge Number 24 which relates to direct and circumstantial evidence and request that that charge be included in the Court's charges together with the charges regarding the defendant not having to take the stand."
The court complied with counsel's request and included the additional charge in its instructions. Counsel did not at this time nor while the judge was instructing the jury call the court's attention to the omissions complained of here. Had he done so, the court may have been as receptive as it was to the requested special charge and could have corrected the deficiency. Absent an objection however, defendant may not raise this issue on appeal, for we have consistently held that a defect in the general charge is not an error "discoverable by a mere inspection of the pleadings and proceedings." State v. Mitchell, 319 So.2d 357 (La.1975).
Next, defendant argues that the invalidation of the death penalty under La. R.S. 14:30 by the United States Supreme Court in Roberts v. Louisiana, ___ U.S. ___, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), requires the reversal of his conviction. We have held that Roberts requires only the reversal of the sentence in capital cases. State v. Jenkins, 340 So.2d 157 (La.1976); State v. McDaniel, 340 So.2d 242 (La.1976). Jenkins further established the guidelines for resentencing defendants convicted of first degree murder:

*835 "* * * [W]e conclude that the appropriate sentence to be imposed upon a valid conviction for first degree murder is the most severe penalty established by the legislature for criminal homicide at the time of the offense, La.R.S. 14:29 et seq., which we may presume to be constitutional in the wake of Roberts v. Louisiana, supra. This penalty is imprisonment at hard labor for life without eligibility for parole, probation or suspension of sentence for a period of twenty years. See La.R.S. 14:30.1, as added by Acts 1973, No. 111, § 1."
Thus, although the death penalty must be vacated, defendant's conviction under La. R.S. 14:30 is valid.
However, the invalidation of the capital sentence poses additional problems in this case. At the time of the offense, defendant, aged 16, was a juvenile and subject to the jurisdiction of the juvenile court except in certain statutorily delineated instances. At that time, La.R.S. 13:1570 provided in pertinent part:
"Except as otherwise provided herein, the [juvenile] court shall have exclusive original jurisdiction in proceedings:
"A. Concerning any child whose domicile is within the parish or who is found within the parish:
"* * *
"(5) Who violates any law or ordinance, except a child charged with having committed a capital crime or a crime defined by any law defining attempted aggravated rape after having become fifteen years of age * * *." (emphasis supplied).
Defendant maintains that when the death penalty was declared unconstitutional, first degree murder lost its status as a capital crime, and he should have been remanded to the custody of the juvenile court. (Cf. La.C.Cr.P. art. 933(2): `"Capital offense' means an offense that may be punished by death"). The identical issue was raised after Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), struck down the death penalty provision of our prior first degree murder statute, La.R.S. 14:30 (1950). State v. Whatley, 320 So.2d 123 (La.1975). Whatley held that the district court retained jurisdiction over a juvenile charged with first degree murder because "as enacted, La.R.S. 14:30 (1950) constituted a legislative classification that the crime of murder constituted a capital offense, and that conduct punishable by this statute remained a `capital' crime for purposes of Louisiana law (even though Furman held that the death sentence could not actually be imposed or executed)." 320 So.2d at 125. Defendant was charged, tried and convicted for an offense which the legislature classified as "capital," and Roberts has no bearing upon the jurisdiction of the district court in this matter.
For the foregoing reasons, defendant's conviction is affirmed, but the death sentence imposed upon him is annulled and set aside, and the case is remanded to the district court with instructions to the trial judge to sentence defendant to imprisonment at hard labor for life without eligibility for parole, probation or suspension of sentence for a period of twenty years.
SANDERS, C.J., and SUMMERS and MARCUS, JJ., concur.