STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

15-597

STATE OF LOUISIANA

VERSUS

ASA BENTLEY
AKA - ASA N. BENTLEY

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 176957
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**DAVID KENT SAVOIE**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, James T. Genovese, and David Kent Savoie, Judges.

**THIBODEAUX, Chief Judge, dissents and assigns written reasons.**

**AFFIRMED.**

**Honorable Charles A. Riddle, III**
**District Attorney, Twelfth Judicial District Court**
**Michael F. Kelly**
**First Assistant District Attorney**
**Post Office Box 528**
**Marksville, LA 71351**
**(318) 253-5815**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Chad Ikerd**
**Louisiana Appellate Project**
**Post Office Box 2125**
**Lafayette, LA 70502**
**(225) 806-2930**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Asa Bentley**

**SAVOIE, Judge.**

On November 14, 2013, the State charged Defendant, Asa N. Bentley, by bill of indictment with one count of second degree kidnapping of Jessica Guillot on or about September 9, 2013, in violation of La.R.S. 14:44.1. The State's indictment relied on the theory that the victim was "forcibly seized and carr[ied] . . . from one place to another wherein [the victim] was physically injured." Defendant was arraigned and pled not guilty on December 10, 2013. Trial by jury commenced on January 13, 2015. A unanimous jury found Defendant guilty on January 14, 2015. Relator was sentenced as a second felony offender pursuant to La.R.S. 15:529.1 to seventy years at hard labor without the benefit of parole, probation, or suspension of sentence on March 24, 2015, and his motion to reconsider sentence was denied on March 31, 2015. This appeal of his conviction follows.[1]

## FACTS

Defendant was indicted with Donnie Dontreal Edwards, Chadwick McGhee, Willie Price, Jr., and Tamika Williams in Avoyelles Parish for the second degree kidnapping of Jessica Guillot. During opening statements, the State explained its theory that Defendant was looking for the twenty-one-year-old victim because she had stolen cocaine from him. With the help of his male co-defendants, Defendant located the victim and forced her into the back of his Dodge Durango. Tamika Williams was sitting in the front passenger seat of the vehicle, and testified that she heard slapping and choking sounds coming from the back of the vehicle where Defendant and the victim were located. Soon thereafter, she heard glass breaking

---

[1]Defendant is also appealing the denial of his motion to reconsider his habitual offender sentence under docket number 15-598.

and smelled something "terrible." Tamika Williams was then dropped off in Simmesport, Louisiana, for roughly fifteen to twenty minutes as the men left with the victim. When her co-defendants returned, the victim was no longer in the vehicle. The State acknowledged that it had struck a plea deal with Tamika Williams to testify. The deal called for her to plead guilty to obstruction of justice with an agreed upon sentence of ten years in prison. She further agreed to testify against all of her co-defendants, after which her sentence would be reduced to time served.

Tamika Williams did indeed testify at Defendant's trial. She explained that on September 7, 2013, Defendant told her he was looking for the victim and that he intended to kill her because she stole drugs and money from him. Defendant asked Ms. Williams to take a ride with him that evening in his Dodge Durango, which they drove to the Y-Not Stop in Mansura, Louisiana. There, they met Chadwick McGhee, Willie Price, and Donnie Edwards, who arrived in another car with Jessica Guillot. Ms. Williams testified that Defendant and Donnie Edwards dragged the victim from the car and put her in the back of Defendant's vehicle. Tamika Williams described that she sat in the front seat, while Donnie Edwards drove, and Defendant put his knees over the screaming victim as she pleaded with him not to kill her. She explained that "[she] could hear noises like somebody getting hit and like somebody getting chocked [sic]." Eventually, she heard glass break, after which everything went quiet, and she noticed a smell "like somebody had went to the bathroom on them self [sic]." She also explained that she was texting her sister on the phone while all of this happened. Tamika Williams' co-defendants dropped her off at her apartment in Simmesport soon thereafter, and she made her way to her mother's house a few miles away on her own. Her co-

2

defendants later returned to pick her up at her mother's home. They were arguing, and it appeared to her that Chad McGhee was crying.

Tamika Williams called 911 several weeks later to report these events. The State played a recording of the 911 call, in which Ms. Williams purportedly identified herself as another woman who had overheard Defendant and "Tamika Williams" "bragging about how they killed some girl name[d] Jessica. I don't know if it's true or not, but she's bragging about it." Ms. Williams explained that she "felt guilty" and misidentified herself to the 911 operator because she was scared to go to the police, so she made the phone call to bring the police to her. She admitted that she did not tell the police "the whole truth" the first time she spoke to them, but she did tell them the truth during a second interview. On cross-examination, Ms. Williams also admitted she called the police after a night of drinking and taking pills. It was further revealed that Ms. Williams called 911 and made a false report in 2009. She confirmed that she spoke to the police on several occasions but was not sure of the exact number of times.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENTS OF ERROR

1. The State committed reversible error by making comments which violated Defendant's constitutional rights to a fair trial and a presumption of innocence.

2. The State's closing rebuttal argument violated Defendant's rights by making arguments that exceeded the scope of Defendant's arguments.

3

3. Alternatively, if the court finds that trial counsel did not properly preserve the issues in the previous assignments of error because he did not lodge an objection at trial, Defendant contends he was rendered ineffective assistance of counsel.

## DISCUSSION

### I. Closing Arguments

All of the assignments of error are based on comments made by the State in closing argument. Defense counsel's closing argument almost exclusively targeted Tamika William's credibility by attacking her for her prior convictions and inconsistent statements to the police. Defense counsel also highlighted what he described as a "sweet heart plea bargain deal" as a reason to question her credibility. He stated that there was "no evidence" his client or any of the other co-defendants received any plea offer like hers. He also reminded the jury of Ms. Williams' previous conviction for giving a false report to 911 operators in 2009. When she called 911 in this case, she used another person's name and was admittedly intoxicated on alcohol and "pills." Afterwards, she provided varying accounts of what happened to the victim, with defense counsel submitting that the State had simply relied on the most recent account to prove its case. Counsel concluded by reminding the jury that Defendant's failure to testify could not be held against him.

The State's rebuttal began with a reference to the testimony of Tomika Mason, Defendant's girlfriend at the time of the offense. The prosecutor recounted the portion of her testimony in which she described Defendant as having "dreadlocks and tatts" and being "in the business of selling drugs" when the incident occurred. He argued that such information provided context, or "motivation," for the kidnapping. The prosecutor then steered his rebuttal towards

4

mourning the loss of the victim, a mother of two, and an admitted drug addict, who enraged Defendant by stealing some cocaine. Once that comment was made, defense counsel requested a bench conference, however, the substance of the discussion is transcribed as "(UNINTELLIGIBLE)." After the bench conference, the prosecutor continued and turned his attention to Tamika Williams. He minimized her criminal history and described her, too, as an addict that Defendant brought along to witness the consequences of stealing from him. The prosecutor resisted the idea that Ms. Williams received a "sweet heart plea deal" as well, highlighting the fact that she pled guilty to a felony and served some time in prison and would continue to be in prison until all of her co-defendants' cases were resolved. He explained how Ms. Williams went to the police on her own and submitted that "the one thing she [Tamika Williams] had that Asa Bentley doesn't have" is a conscience.[2] He continued:

> She knew she had done wrong being in that car with those men when they took Jessica Guillot into the night. She knew she had figuratively, blood on her hands. She was responsible as a participant. She lead the police to her front door . . . [and] gave the statement October 10 when she laid out what happened.

He emphasized that, over the course of seven interviews with law enforcement, she was found to be "consistent on all the major points."

## II. The Assignments of Error

We will address the third assignment of error as it presents the threshold issue of whether counsel preserved the first two issues for review. It anticipates the possibility that this court will decline review of the substance of Defendant's claims based on trial counsel's failure to timely object during rebuttal. In such

---

[2]The transcript incorrectly states that Ms. Williams had a "conscious." Based on the context it is clear that the transcriber simply misspelled the word "conscience."

event, Defendant alternatively requests that the court review the claim as one of ineffective assistance of trial counsel based upon his attorney's failure to sufficiently preserve the issues by appropriate objection. The State responds that the claim is without merit because no prejudice can be shown.

The facts presented above demonstrate that trial counsel failed to lodge an oral objection on the record to either the scope of defense counsel's closing or his allegedly improper comment regarding Defendant's lack of a conscience. Defendant's brief asserts that an objection was made regarding his "scope" claim and that the court "improperly" overruled the objection. This claim apparently finds its basis in Defendant's motion for a new trial, filed February 11, 2015, in which Defendant asserted that he timely objected to the State's rebuttal. However, a review of the transcript shows only that Defendant's trial counsel asked to approach the bench during rebuttal, without any indication as to the content of the conversation at the bench. The motion relied on La.Code Crim.P. art. 774, which states "[t]he state's rebuttal shall be confined to answering the argument of the defendant." The motion for new trial did not, however, assert any impropriety as to the prosecutor's comment on Defendant's lack of a conscience. Instead, in conjunction with his argument regarding the scope of rebuttal, the motion accused the prosecutor of insinuating that defense counsel was hiding certain facts and that the "State's argument in this respect should be likened to indirectly commenting about defendant's failure to testify."

The relevant portion of the criminal procedure law states that:

> An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known

6

to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

La.Code Crim.P. art. 841(A). In *State v. Lee*, 346 So.2d 682, 684-85 (La.1977), the supreme court addressed La.Code Crim.P. art. 841 in detail:

> [Louisiana Code of Criminal Procedure] Article 841 is not an inflexible rule imposed on criminal litigants without rationale or justification. It is necessary adjunct to our role as an appellate court which is intended to promote judicial efficiency and to insure fair play. *See State v. Smith*, 339 So.2d 1379 (La.1977); *State v. Ervin*, 340 So.2d 1379 (La.1977); *State v. Marcell*, 320 So.2d 195 (La.1975). For example, its operation prevents a defendant from gambling for a favorable verdict and then, upon conviction, resorting on appeal to errors that could have been corrected at trial, had he but [sic] brought the errors to the judge's attention. *State v. Smith*, *supra*; *State v. Knight*, 323 So.2d 765 (La.1975); *State v. Marcell*, *supra*.
>
> . . . .
>
> What our rules require is that counsel bring an error to the attention of the trial judge within a reasonable time after the error occurs so that he can cure the error or declare a mistrial. C.Cr.P. arts. 770, 771, 841. Generally, a contemporaneous objection must be made immediately. In certain instances, however, objections which come shortly thereafter will be considered timely, *see State v. Foss*, 310 So.2d 573 (La.1975), and there are even instances in which no objections are required because they would be a vain and useless act, *see State v. Ervin*, *supra*. Particularly may there be such exceptions to the general rule during closing argument for reasons expressed in the following law review comment:
>
> > "one must recognize that the closing argument of the prosecutor may be so permeated with improprieties that constant objections may alienate the jurors or underscore the remark rather than erase it from their minds. Therefore, an objection at the end of the summation should be considered timely, and in some cases should be allowed outside the presence of the jury." (citations omitted) 34 L.L.Rev. 746, 759 (1974).
>
> Moreover, we recognize that a prosecutor's prejudicial comments in closing argument may be considered by a federal court to violate federal due process guarantees even in the absence of a defense challenge or objection at trial. *United States v. Briggs*, *supra*; *United States v. Grunberger*, 431 F.2d 1062 (2d Cir. 1970); *United States v. Sawyer*, 347 F.2d 372 (4th Cir. 1965).

An objection in this case would not have been a "vain and useless act" such as in *State v. Ervin*, 340 So.2d 1379, 1381 (La.1976), in which objectionable testimony was allowed despite "defense counsel [having] made every reasonable effort to prevent the introduction of the statement complained of in advance of its utterance." Nor can it be said that defense counsel sought to avoid repeated objection before the jury, as not even a single objection was raised on the record during closing. It is arguable that defense counsel declined to object to avoid highlighting what he perceived to be a comment on Defendant's failure to testify. However, per *Lee*, defense counsel could have lodged the objection on the record after rebuttal and outside the presence of the jury so as to "cure the error" at the appropriate time.

We find that raising these claims for the first time—and in an incomplete fashion—in a motion for new trial does not constitute "contemporaneous objection." *State v. Hamilton*, 03-1385, p. 21 (La.App. 3 Cir. 3/3/04), 867 So.2d 151, 165, *writ denied*, 04-1227 (La. 4/22/05), 899 So.2d 567; *see also State v. Sykes*, 03-397, p. 23 (La.App. 3 Cir. 10/8/03), 857 So.2d 638, 653, *writ denied*, 03-3429 (La. 4/2/04), 869 So.2d 875. Nevertheless, "Louisiana courts have recognized certain rights are so basic and 'due process' requirements mandate that they may be asserted for the first time on appeal or noticed as an error patent by mere inspection of the pleadings and proceedings." *State v. Pyke*, 93-1506, p. 3 (La.App. 3 Cir. 5/4/94), 640 So.2d 460, 462.

In *State v. Day*, 14-708, p. 11 (La.App. 3 Cir. 12/23/14), 158 So.3d 120, 129, this court reiterated its adherence to the general rule requiring contemporaneous objection:

However, "[a] new basis for objection cannot be raised for the first time on appeal." *State v. Fowlkes,* 352 So.2d 208, 211 (La.1977) (citing La.Code Crim.P. art. 841); *See also State v. Johnson,* 438 So.2d 1221, 1225 (La.App. 3 Cir.1983). Thus, Defendant cannot now attempt to avail herself of the alleged error. *See also State v. Klein,* 351 So.2d 1158 (La.1977). The alleged error does not affect the "entire framework of the trial from beginning to end, without reference to any other trial consideration." *Langley,* 958 So.2d at 1168. As previously mentioned, Defendant did not move for a new trial. For the same reasons articulated in our analysis of her first assignment of error, she cannot now request one.

In light of this jurisprudence, the court must determine if any of the aforementioned exceptions to the requirement of contemporaneous objection apply, and, if not, whether there exists sufficient evidence in the record to evaluate and decide the merits of Defendant's alternative claim of ineffective assistance of counsel.

We find that none of the exceptions set forth in *Lee* are applicable here. Thus, this court must decide whether the State's comment amounted to one affecting the "entire framework of the trial," as mentioned in *Day,* or infringed on a right "so basic" that due process requirements mandate recognition even though the claim is raised for the first time on appeal. As these questions turn on the more substantive issues raised in Defendant's other assignments of error, we must now discuss them.

In his first assignment of error, Defendant specifically takes issue with the prosecutor's comments contrasting him with Tamika Williams, suggesting that she had a conscience, and he did not. He submits that the "unmistakable inference the State tried to make to the jury with this comment is that Ms. Williams is trustworthy because she admitted her culpability and that [Defendant] does not accept responsibility because he did not plead guilty, forcing the state to prove [its] case at trial." Such a comment, in turn, "violated the defendant's constitutional

9

right to a fair trial because, in rebutting the defense's argument about the trustworthiness of a testifying co-defendant, the State went too far and inferred that the defendant did not take responsibility for his actions *unlike his co-defendant who pled guilty.*"

Defendant relies on *State v. Jones*, 98-1165 (La.App. 3 Cir. 2/3/99), 734 So.2d 670, in which this court addressed a similar situation. In *Jones*, a co-defendant pled guilty to theft and testified at the defendant's trial that defendant was with him during the theft. *Id.* at 671. In the decision's quoted portion of the prosecutor's rebuttal, the prosecutor alluded to defense counsel's characterization of the cooperating co-defendant as a "self-confessed liar." *Id.* In response, the prosecutor contrasted the two men, arguing that the co-defendant "took responsibility for what he did and pled guilty," whereas, the defendant "[did] not want to take responsibility for his actions." *Id.* at 671-72. The court overruled defendant's objection to the comment and denied his motion for a mistrial. *Id.* at 672.

On appeal, the *Jones* defendant submitted that the comment violated La.Code Crim.P. art. 770(3), which prohibits both direct and indirect comment on a defendant's failure to testify at trial. *Id.* at 672. This court differentiated one's election not to testify from one's election not to enter a plea but, nonetheless, characterized comment on the latter as "impermissible." *Id.* at 672. This court reasoned that the remark "focused on the failure of the Defendant to act similarly to the co-defendant and plead guilty[]" which led the jury "to infer that because . . . defendant[] did not want to take responsibility for his actions, as did . . . co-defendant[,]" he did not plead guilty. *Id.* at 672. Since this court found that the prosecutor's comment infringed on the defendant's right to the presumption of

innocence, a right "so basic to a fair trial that [its] infraction can never be treated as harmless error,[]," a mistrial was ordered. *Id.* at 673.

The State argues in its brief that it was simply responding to defense counsel's closing challenging the credibility of Tamika Williams. The State takes the position that the comparison to *Jones* is "misplaced and incorrect." *Jones*, it submits, involved a prosecutor who "zeroed in on a co-defendant's plea of guilty," whereas the case at bar involved "explaining the motive or reason Tamika Williams made a 911 call." The State suggests that the word "conscience" was simply used "to differentiate the two persons" and that it was "**NOT** a statement which inferred there should be no trial and did not suggest that by pleading guilty Tamika Williams proved she had a conscience and conversely that ASA BENTLEY should have pled guilty."

We agree with the State. We do not believe that the prosecutor's comments rise to the level of a structural error and did not infringe on Defendant's right to the presumption of innocence. As such, we find that the claim is precluded from review for failure to properly preserve the issue and because no other exception applies. We must now decide if the failure of counsel to object and preserve the issue for appeal constitutes ineffective assistance of counsel.

The framework for evaluating this portion of Defendant's claim can be found by reference, again, to this court's reasoning in *Day*, 158 So.3d at 129:

> Finally, we find that Defendant has failed to meet her burden of proof on her claim that failure to object to Dr. McCanless' testimony constitutes ineffective assistance of counsel because she has not alleged that defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. Further, she has not alleged any prejudice. Both prongs of the test set out in *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, must be satisfied in order to find ineffective assistance of counsel. *State v. Truehill*, 09–1546 (La.App. 3 Cir. 6/2/10), 38 So.3d 1246. Her "[g]eneral

statements and conclusory allegations will not suffice to prove a claim of ineffective assistance of counsel." *State v. Celestine,* 11–1403, p. 5 (La.App. 3 Cir. 5/30/12), 91 So.3d 573, 577 (citing *State v. Camp,* 46,052 (La.App. 2 Cir. 3/16/11), 59 So.3d 548, *writ denied,* 11–954 (La.12/16/11), 76 So.3d 1199.)

Claims of ineffective assistance of counsel are generally relegated to applications for post-conviction relief because of the trial court's superior ability to conduct comprehensive evidentiary hearings. *State v. Prudholm*, 446 So.2d 729 (La.1984). However, when the record on appeal provides sufficient information for an appellate court to rule on the merits, such a claim may be reviewed by the appellate court in the interest of judicial economy. *State v. Ratcliff*, 416 So.2d 528, 530 (La.1982). We find, based on the arguments made by Defendant in this regard, there is sufficient information in the record to proceed on the issue of ineffective assistance of counsel.

As stated in *Day*, we must look to Defendant's showing for each prong set forth in *Strickland*. Defendant relies upon counsel's failure to preserve the claim for review to prove deficient performance.[3] Defendant argues that he was prejudiced by reverting back to *Jones*, insisting that "the statements by the State in rebuttal violated the basic, core principle fundamental to the criminal justice system: the right to a fair trial." This showing of prejudice is not sufficient for the reasons set forth in the discussion of assignment of error one. We do not find that the statement amounts to a structural error or that it infringes upon a basic right.

---

[3]We note that Defendant's brief conflates the issue of preservation as to each of the other assignments of error. Regarding his first assignment of error, he asserts that "[t]he record does indicate the defense counsel was aware of this right and made some effort to protect it by making the objection during rebuttal and specifically citing the statutory provisions in the Motion for a New Trial." However, as we already noted, defense counsel did not object when the State referred to Defendant's lack of conscience. Counsel only asked to approach the bench prior to this comment, at which time an "unintelligible" conference occurred. Thus, there is no merit to the claim that "the objection showed proof of knowledge of the issue," as the objection related to Defendant's second assignment of error that the State went beyond the proper scope of rebuttal.

Without establishing both prongs of ineffective assistance, Defendant's claim is without merit.

Finally, Defendant further attacks the State's rebuttal for violating La.Code Crim.P. art. 774, which limits rebuttal to addressing a defendant's closing argument. Defendant argues that the State instead "used its right to rebuttal argument to rehash its whole case and present arguments on issues never before discussed that were outside the scope of the defense's closing arguments." Specifically, Defendant asserts there was no need to refer to his "dreadlocks and tatts" because his appearance was never an issue. He further argues that there was no need to mention that the victim was a mother of two who was "swallowed up in the dark of the night." Most significantly, Defendant asserts that the State offered a "whole new theory" during its rebuttal regarding Defendant's reason for involving Tamika Williams in his crime, that is, to send a message to other addicts that there would be consequences for stealing from him. Defendant concludes that "to present this theory for the first time and not allow the defense an opportunity to offer a [counterargument]" violated the code of criminal procedure.

In response to Defendant's complaint that he did not have an opportunity to respond to the State's new theory on rebuttal, the State argues that it was "a fair response" to Defendant's attack on Ms. Williams' credibility. The State appears to suggest that dreadlocks and tattoos are an indication of something more probative than the simple fact that Defendant had dreadlocks and tattoos at the time of the offense. Finally, the State argues that the rebuttal could not fairly be said to have contributed to the verdict as the evidence of Defendant's guilt was "simply overwhelming."

The scope of proper closing argument is confined to "evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom and to the law applicable to the case." La.Code Crim. Proc. Ann. art. 774 (West 1998). However, a prosecutor is afforded considerable latitude in making closing arguments. *State v. Byrne,* 483 So.2d 564 (La.1986), *cert. denied,* 479 U.S. 871, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986); *State v. Morris,* 404 So.2d 1186 (La.1981). As a general rule, the prosecutor may not use closing argument as a vehicle to express his personal opinions about the defendant when his opinion is expressed in a manner that the jury may understand has been formed from evidence outside of the record. *State v. Procell,* 365 So.2d 484, 489 (La.1978), *cert. denied,* 441 U.S. 944, 99 S.Ct. 2164, 60 L.Ed.2d 1046 (1979). Such an opinion is permissible if the prosecutor refers to, or it is apparent that his opinion is based on, the evidence of record. *Id. See also State v. Hicks,* 395 So.2d 790, 797–98 (La.1981); *State v. Bretz,* 394 So.2d 245, 248 (La.1981), *cert. denied,* 454 U.S. 820, 102 S.Ct. 102, 70 L.Ed.2d 91 (1981).

This Court has recognized as a matter of well-settled law that the prosecutor has the right to "press upon the jury any view of the case arising out of the evidence—the Supreme Court is bound to credit jurors with common intelligence, conscientiousness, and sense of duty." *State v. Alexander,* 215 La. 245, 40 So.2d 232, 234 (La.1949). Even when we have found the prosecutor to have exceeded the proper bounds of argument, this Court has often criticized the improper arguments without finding that they constituted reversible error. *See, e.g. Byrne, supra; State v. Jarman,* 445 So.2d 1184 (La.1984); *State v. Messer,* 408 So.2d 1354 (La.1982). The standard by which this Court determines whether improper closing argument constitutes reversible error is whether it is "firmly convinced that the jury was influenced by the remarks and that they contributed to the verdict." *State v. Sanders,* 93–0001 p. 16–17 (La.11/30/94), 648 So.2d 1272, 1285–86, *cert. denied,* 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996); *Byrne,* 483 So.2d at 572; *Messer,* 408 So.2d at 1357.

*State v. Frost*, 97-1771, pp. 18-19 (La. 12/1/98), 727 So.2d 417, 432-33, *cert. denied*, 528 U.S. 831, 120 S.Ct. 87 (1999), *superceded by statute on other grounds as stated in State v. Gomez*, 00-566 (La. 1/17/01), 778 So.2d 549.

We find that the comment regarding Defendant's "dreadlocks and tatts" and the victim being "swallowed up in the night," is irrelevant and cannot be said to have "contributed to the verdict." The jury heard the testimony of Ms. Mason regarding Defendant's appearance. Defense counsel could have moved to strike

14

that portion of her testimony if he felt the need. Therefore, we find no merit to this claim. Additionally, it was a matter of record that the victim has not been seen since the crime occurred, and the prosecutor's latter comment merely reflected this fact.

As for the prosecutor's introduction of his theory that Ms. Williams was brought along as a witness for purposes of Defendant's show of force as a drug dealer, we find that the comment served to "press upon the jury" the prosecutor's view of the facts and that the theory was indeed based solely on evidence contained in the record. The comment was a fair response to defense counsel's attack on Ms. Williams' credibility, as it goes to show *why* she was there when the crime occurred.

Defense counsel's failure to object did not amount to "ineffective assistance of counsel" since no prejudice has been shown. Defendant's claim is denied.

## DECREE

For the reasons stated above, we find the claims set forth in Defendant's assignments of error one and two are precluded for defense counsel's failure to timely and properly object. We further find no merit to Defendant's claim of ineffective assistance of counsel based on Defendant's failure to demonstrate prejudice.

**AFFIRMED.**

STATE OF LOUISIANA

VERSUS

ASA BENTLEY

AKA - ASA N. BENTLEY

**THIBODEAUX, Chief Judge, dissenting.**

I adhere to my views expressed in *State v. Jones*, 98-1165 (La.App. 3 Cir. 2/3/99), 734 So.2d 670.

The prosecutor's comments here similarly drew attention to Defendant's failure to "act similarly" to his co-defendant, Ms. Williams, and "take responsibility." This court determined the comment in *Jones*—a comment on defendant's *failure to plead guilty*—to be a structural error, or one which "affects the framework within which the trial proceeds[]" and which "defies harmless error standards[.]" *Id.* at 673. We went on to elaborate:

> Those comments injected in to the process the imprimatur of the state's representative on the jury. The comments had the high probability of allowing the jury to impose a lesser standard than guilt beyond a reasonable doubt during the deliberative process. The impermissible comments also had the highly prejudicial potential of permitting the jury to abdicate its standard of review in a criminal proceeding. They were unrelated to any truth-seeking function and aborted the presumption of innocence and right to a fair trial guaranteed by Article 1, Section 16 of the Louisiana Constitution and the Sixth and Fourteenth Amendments to the United States Constitution.

*Id.* (footnote omitted). This court concluded: "[S]ome rights are so basic to a fair trial that their infraction can never be treated as harmless error. The presumption

of innocence is one of those rights." *Id*.  In this case, Mr. Bentley's presumption of innocence was compromised, and his right to a fair trial impaired.

For the foregoing reasons, I would reverse Defendant's conviction and remand for a new trial.