# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 21-725

**STATE OF LOUISIANA**

**VERSUS**

**RONALD WATSON AND STEPHEN WATSON**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2019-CR-218222-B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHANNON J. GREMILLION**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Charles G. Fitzgerald, and Gary J. Ortego, Judges.

**CONVICTION AFFIRMED. SENTENCES AFFIRMED.**

**Edward K. Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Ronald Watson**

**Meghan Harwell Bitoun**
**Louisiana Appellate Project**
**P.O. Box 4252**
**New Orleans, LA 70178**
**(504) 470-4779**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Stephen Watson**

**Hon. Charles A. Riddle, III**
**Twelfth Judicial District Attorney**
**Anthony F. Salario**
**Derek Manuel**
**Assistant District Attorneys**
**P. O. Box 1200**
**Marksville, LA 71351**
**(318) 253-6587**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**GREMILLION, Judge.**

Defendants, Ronald Watson and Stephen Watson, appeal their sentences for Aggravated Assault with a Firearm, a violation of La.R.S. 14:37.4. Ronald also asserts that the evidence was insufficient to support his conviction.

## FACTS

On November 26, 2019, Defendants and Jacoby O. Lewis were charged by bill of information with committing aggravated assaults with firearms on September 25, 2019, against "Roderick Watson." Defendants were tried before a six-person jury on May 11, 2021.

The State's first witness was Jacoby Lewis. Mr. Lewis testified that on September 25, 2019, he was working at the cattle auction barn in Mansura, Louisiana. After work, Mr. Lewis drove to Simmesport. He then met Ronald and Stephen, and the three were "going to make a store run." Mr. Lewis drove to Valero to purchase a Blackie Mild, but the store was closed. He then drove from the store to go feed his dogs. He drove down Riverside, the street on which Roderick "Road Dog" Hartford stayed.

Mr. Lewis stopped on Riverside at a stop sign that is located close to Mr. Hartford's house. Mr. Hartford was outside, and Mr. Lewis saw him "fumbling or something" with what looked like a weapon, so Mr. Lewis hit the gas and turned left.

Ronald was sitting in the front passenger seat and Stephen was behind him. Mr. Lewis did not see Ronald with a weapon. He heard gunshots that sounded like they came from his vehicle. He does not know how many shots were fired or if they all came from the same weapon. He looked back and saw Stephen "coming out the window into the car." Stephen had a revolver in his hand.

Mr. Lewis then drove to the home of Ronald and Stephen's grandmother, Ms. Ruby Lee Watson, on Yellow Bayou Road. They did not drive past any bodies of

water on the way. The occupants then ran into the woods. Mr. Lewis does not know what happened to the gun.

Following the incident, Mr. Lewis surrendered to the Simmesport police. He gave the police a statement. Later, Mr. Lewis pleaded guilty to aggravated battery in exchange for testifying truthfully against the Watsons.

Roderick Hartford lived in Florida at the time of trial but was a lifelong resident of Simmesport prior to moving to Florida. On the date of the incident, Mr. Hartford only knew who Ronald and Stephen were and did not know them personally. At the time, Mr. Hartford was living at his parents' home taking care of them. His mother is paralyzed, and his father suffers from dementia.

As he was returning from the post office on September 25, 2019, Mr. Hartford saw the vehicle in which Defendants were riding. The vehicle passed by. Mr. Hartford testified, "I think something was said, I can't remember—something was said or whatever one of them hollered something and I hollered back at whatever." Mr. Hartford saw the vehicle loop back around and he "knew what they was going to do." He alighted from the vehicle, which belonged to his girlfriend, and hurried to the house to protect his parents.

> A. Ronald was sitting on the ... when they got by the stop sign or whatever you know, Ronald was sitting...he was already positioned, sitting on the outside of the window or whatever. And he started shooting.
>
> Q. Where was he at in the car?
>
> A. On the passenger side.
>
> Q. On the passenger side in front?
>
> A. Yeah.

Mr. Hartford does not know whether Stephen was also shooting, but he saw that Stephen, too, had a gun. Mr. Hartford was hit by one shot in the left leg. After the

incident, Mr. Hartford was airlifted to Rapides Regional Medical Center for treatment.

While he did not know the Watsons, Mr. Hartford recalled an incident some time earlier in which he and Stephen had exchanged words. After that, every time he saw them, words would be exchanged.

Mr. Hartford gave a written statement to the police on September 26, 2019. The statement comported with Mr. Hartford's testimony except for his reference in the statement to the car belonging to his wife. Mr. Hartford denied being in possession of a weapon at the time of the incident.

Avoyelles Parish Sheriff's Deputy Damien Jacobs was Chief of Police for Simmesport on the date of this incident. He heard five or six gunshots from the police station, where he had just returned from traffic patrol. He alerted his patrol officers to go to the area and investigate. Then, an unknown female pulled up and told him that there had been a shooting on "Teenage Lane," or Riverside. The unknown female gave a description of the vehicle and identified the Watsons as the shooters. Chief Jacobs drove to the scene and was flagged down by people in the front yard of the house.

Mr. Hartford was inside the house. A female was applying pressure to his wounded leg. Mr. Hartford told Chief Jacobs who had shot him. The chief had stopped the vehicle five or ten minutes before the incident and "kind of knew" where the Defendants would be going. He directed his officers where to go. Among the actions he took at the scene was taking photographs of the house and car.

Eventually, Mr. Lewis and the Defendants began to turn themselves in. Stephen Watson waived his *Miranda* rights and gave a statement to Chief Jacobs and Detective Glenn Hall. That statement was video recorded and played for the jury. In the statement, Stephen admitted hanging out the window of the vehicle and

3

that the vehicle had made the block and returned to Mr. Hartford's house but stated that Mr. Lewis had shot at Mr. Hartford. Stephen stated that the guns were thrown into a bayou.

Officer Gerald Jackson located one spent .40 caliber cartridge case and four spent .380 cases in the intersection of Riverside and Couvillion Street. The State introduced photographs taken at the scene by investigators that identified five bullet holes in the Hartford house and one in the vehicle Mr. Hartford had driven.

Following Chief Jacobs' testimony, the State rested its case. The defense presented no evidence. The jury returned unanimous verdicts convicting Ronald and Stephen of Aggravated Assault with a Firearm.

Pre-Sentence investigations were prepared on each Defendant. At the sentencing hearing, Defendants submitted letters in support of leniency. The trial court summarized the pertinent facts of the offense, including the fact that bullets also entered the Hartfords' home and could easily have hit either of Roderick Hartford's disabled parents. The trial court considered it a "strong benefit" to the Defendants that they were not charged with Attempted Second Degree Murder.

Stephen had a juvenile criminal history and Ronald had a pending charge of possession of marijuana at the time of sentencing, in addition to juvenile charges. However, both were first felony offenders. The Twelfth Judicial District Attorney recommended that each receive seven years' imprisonment. The Division of Probation and Parole made no recommendation about sentencing.

The trial court found the following aggravating factors: the crime manifested deliberate cruelty to the victim; knowing risk of death or great bodily harm to more than one person; violence in the commission of the offense; the offense resulted in significant injury to the victim; damage to the Hartfords' home; use of a dangerous weapon in the commission of the offense; and foreseeable endangerment of human

4

life in the offense. As a mitigating factor, the trial court found that imprisonment of the Defendants would entail hardship to themselves or their dependents. The trial court found that there was an undue risk of Defendants committing another offense during any period of probation or suspension of sentence; therefore, Defendants needed correctional confinement. The trial court sentenced each to eight years' imprisonment with credit for any time served since the date of the offense. Because Defendants were convicted of crimes of violence, their sentence would not be subject to diminution for good behavior. After pronouncing sentence, the trial court advised Defendants of the applicable appeal and post-conviction relief delays.

## ASSIGNMENTS OF ERROR

Ronald asserts that the evidence presented at trial was insufficient to sustain a conviction and that the trial court erred in imposing an unconstitutionally excessive sentence.

Stephen asserts that the sentence he received is unconstitutionally excessive.

## ANALYSIS AND DISCUSSION

*Errors Patent*

Louisiana Code of Criminal Procedure Article 920 requires that we review all sentences for errors patent on the face of the record. We find two such patent errors.

The bill of information accused Defendants of violating La.R.S. 14:37.2, Aggravated Assault upon a Peace Officer, rather than La.R.S. 14:37.4. However, this error may not constitute a ground "for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice." La.Code Crim.P. art. 464. The remainder of the bill of information clearly sets forth facts that would state a violation of La.R.S. 14:37.4; accordingly, this error is harmless.

The second patent error appears in the trial court's statement that Defendants' sentences are not subject to diminution of sentence. At sentencing, the trial court stated the following:

> But I am going to sentence Stephen Watson and Roland [sic] Watson and hereby sentence each of you to serve a period of eight (8) years in the Louisiana Department of Corrections with credit for any time served since September 25th , 2019. These sentences are crimes of violence and are not subject to diminution for good behavior, these are not enhanced sentences.

Additionally, the minutes of sentencing for both Defendants state, in pertinent part:

> AS REQUIRED BY ARTICLE 890.1 OF CODE OF CRIMINAL PROCEDURE ARTICLE 894.1D OF THE CODE OF CRIMINAL PROCEDURE, THE COURT DESIGNATED THAT THE CRIME INVOLVED WAS A CRIME OF VIOLENCE OR ATTEMPTED CRIME OF VIOLENCE AS DEFINED OR "AS REQUIRED BY ARTICLE 890.1 OF THE CODE OF CRIMINAL PROCEDURE ENUMERATED IN R.S. 14:2"13". . . .

Louisiana Code of Criminal Procedure Article 890.1 was amended in 2012 and no longer authorizes a trial court to deny or restrict diminution of sentence for crimes of violence. 2012 La. Acts No. 160. Trial courts are no longer required to advise defendants of whether their sentences are subject to diminution. In *State v. Prejean*, 08-1192 (La. 2/6/09), 999 So.2d 1135, the Louisiana Supreme Court held that the provisions of La.R.S. 15:537(A), which prohibits diminution of sentence for certain sex offenders, and the provisions of La.R.S. 15:571.3, which sets forth the guidelines for diminution of sentence for all prisoners, do not form part of the sentence but are directives to the Department of Corrections in computing an inmate's sentence. In *State v. Samuel*, 19-408 (La.App. 3 Cir. 2/5/20), 291 So.3d 256, *writ denied*, 20-398 (La. 7/24/20), 299 So.3d 77, this court addressed a possible error patent involving diminution of sentence and determined that the trial court's language was merely advisory. We so conclude in this matter as well.

6

***Sufficiency of the Evidence (Ronald)***

Ronald asserts that the evidence failed to prove beyond a reasonable doubt that he committed Aggravated Assault with a Firearm. Ronald notes that Mr. Lewis was the first to turn himself in and agreed to testify truthfully. In this testimony, Lewis stated he did not see Ronald with a weapon on the day of the shooting but saw Stephen hanging out the window and holding a dark revolver. Ronald also notes that Stephen admitted to hanging out the window, but Stephen stated Lewis was the person shooting. Ronald further notes that Hartford testified that he saw Ronald shooting but did not see Stephen with a gun. However, Ronald indicates that in Hartford's report to the police following the shooting, Hartford did not indicate who was the shooter, and on the day after the shooting, Hartford stated that Stephen was shooting.

Ronald asserts that the State failed to prove that he was guilty of aggravated assault with a firearm because the circumstantial evidence in this case does not exclude every reasonable hypothesis of innocence under *State v. Ortiz*, 96-1609 (La. 10/21/97), 701 So.2d 922, *cert. denied*, 524 U.S. 943, 118 S.Ct. 2352 (1998). Ronald further asserts that the State cannot prove he was a principal because "there was no causal nexus showing that he injured, or participated in the injuring, of Roderick 'Road Dog' Hartford beyond a reasonable doubt." Therefore, Ronald asserts that his conviction must be reversed for insufficient evidence, or in the alternative, this court could enter a conviction for a lesser offense.

Aggravated Assault with a Firearm is defined by La.R.S. 14:37.4(A) as "an assault committed with a firearm." An Assault is defined in La.R.S. 14:36 as "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." A Battery is further defined as "the intentional use of force or violence upon the person of another; or the intentional administration

of a poison or other noxious liquid or substance to another." La.R.S. 14:33. Therefore, Aggravated Assault with a Firearm may be correctly stated as "An attempt to use force or violence upon the person of another with a firearm, or the intentional placing of another in reasonable apprehension of receiving force or violence with a firearm." The statutes do not require a showing that Ronald participated in the injuring of Mr. Hartford, but that he attempted to shoot Mr. Hartford or placed Mr. Hartford in reasonable apprehension of being shot.

The general analysis for insufficiency of the evidence claims is well-established:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Additionally, we find the second circuit's restatement of the standard of appellate review for sufficiency instructive:

> This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
>
> The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. The appellate court does not assess credibility or reweigh the evidence. A reviewing court affords great deference to the trier of fact's decision to accept or reject the testimony of a witness in whole or in part.

8

Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. Such testimony alone is sufficient even where the State does not introduce medical, scientific, or physical evidence. The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on the fact finder's discretion only to the extent necessary to guarantee the fundamental due process of law.

*State v. Hawthorne*, 53,932, pp. 13-15 (La.App. 2 Cir. 9/22/21), 327 So.3d 606, 614, *writ denied*, 21-1710 (La. 1/12/22), 330 So.3d 618 (citations omitted).

Mr. Lewis testified that he witnessed Stephen with a handgun, heard gunshots, and saw Stephen returning to his seated position after leaning out of the window of the car. He did not witness Ronald firing shots. Mr. Lewis was, though, busy driving the car hurriedly because he saw Mr. Hartford fumbling with what he thought was a weapon.

Mr. Hartford specifically identified Ronald as the one shooting at him. Chief Jacobs testified that he heard five or six gunshots. Investigators found four .380 cartridge cases and one .40 cartridge case in the intersection of Riverside and Couvillion Street, so two guns had been fired in the vicinity. Two witnesses—one of whom was under fire at the time, while the other was occupied driving the vehicle that was fleeing the scene—identified two different shooters, Ronald and Stephen. Two different calibers of handgun cartridge cases were found in the intersection where the vehicle occupied by the Watsons was located while the shooting took place.

When both direct and circumstantial evidence are presented, each must be viewed in the light of other, and the trier of fact must determine the reasonable inferences to be drawn therefrom. *State v. Bryant*, 12-233 (La. 10/16/12), 101 So.3d

9

429, *writ denied*, 12-229 (La. 1/25/13), 105 So.3d 61. In *State v. Chism,* 436 So.2d 464, 469 (La.1983), our supreme court stated, "The gist of circumstantial evidence, and the key to it, is the inference, or process of reasoning by which the conclusion is reached. This must be based on the evidence given, together with a sufficient background of human experience to justify the conclusion." Conflicting evidence goes to the weight of that evidence, not its sufficiency. *Hawthorne*, 327 So.3d 606. We find that a rational trier of fact could have found that Ronald possessed a firearm, pointed it at Mr. Hartford, and fired one or more shots at him. These are the essential elements of Aggravated Assault with a Firearm. This assignment of error lacks merit.

***Excessiveness of Sentences (Ronald and Stephen)***

Defendants argue that their eight-year sentences are constitutionally excessive. Louisiana Code of Criminal Procedure Article 881.1 provides the mechanism for preserving the review of a sentence on appeal:

> A. (1) In felony cases, within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
>
> . . . .
>
> E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

Thus, a line of jurisprudence would bar Defendants from appealing their sentences. *See State v. Bamburg*, 00-675 (La.App. 3 Cir. 11/2/00), 772 So.2d 356; *State v. Williams*, 01-998 (La.App. 3 Cir. 2/6/02), 815 So.2d 908, *writ denied*, 02-578 (La. 1/31/03), 836 So.2d 59; *State v. Duplantis*, 13-424 (La.App. 3 Cir. 11/27/13), 127 So.3d 143, *writ denied*, 14-283 (La. 9/19/14), 148 So.3d 949.

This court has, however, previously reviewed claims of excessiveness where no motion to reconsider sentence was filed or objection made. In those situations, this court has performed a bare excessiveness review. *State v. Jackson*, 14-9 (La.App. 3 Cir. 6/18/14), 146 So.3d 631, *writ denied*, 14-1544 (La. 2/27/15), 159 So.3d 1066; *State v. Soriano*, 15-1006 (La.App. 3 Cir. 6/1/16), 192 So.3d 899, *writ denied*, 16-1523 (La. 6/5/17), 219 So.3d 1111; *State v. Price*, 16-899 (La.App. 3 Cir. 4/5/17), 216 So.3d 304; *State v. Debarge*, 17-670 (La.App. 3 Cir. 2/7/18), 238 So.3d 491.

The analysis for an excessive sentence claim is well-established:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U .S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

> *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-0838 (La.2/1/02), 808 So.2d 331 (alteration in original).

*State v. Guilbeau*, 11-99, p. 7 (La.App. 3 Cir. 6/22/11), 71 So.3d 1020, 1025.

While they fall on the higher end of the sentencing range, the Defendants' eight-year sentences do fall within the range prescribed by La.R.S. 14:37.4, a fine of no more than ten thousand dollars or imprisonment for not more than ten years, with or without hard labor, or both.

A sentence that falls within the statutory range may still be reviewed for constitutional excessiveness. *See State v. Sepulvado*, 367 So.2d 762 (La.1979). Stephen argues his sentence is excessive due to the State's request for the trial court to be "slightly more lenient on [him]." Stephen additionally points to an overwhelming amount of community support, his current employment, and his new family as reasons to support a lower sentence.

Ronald's excessive sentence claim is based on the State's recommendation that he receive a seven-year sentence.

At sentencing, the trial court stated it could find "no motive or reason for the attack upon [the victim]." The trial court found the attack especially brazen as it occurred in broad daylight and close to the local police station. The court noted how both Defendants attempted to avoid accountability by fleeing the scene and disposing of the guns. Furthermore, the trial court noted both men failed to take accountability for their role in the shooting; the trial court emphasized Stephen's failure to apologize for his actions until the morning of sentencing.

As noted above, the trial court found six aggravating factors applicable to both Defendants after reviewing the case pursuant to La.Code Crim.P. art. 894.1. As the offense was a shooting, the trial court considered the offense deliberately cruel while also committing a risk of death or harm to additional persons.[1] Furthermore, the trial court stated that shooting a gun is an inherently violent act, and this act resulted in a serious injury. The trial court pointed to the Defendants' use of dangerous weapons in the commission of the offense.

---

[1]At this time, Mr. Hartford lived with his elderly parents. The shots, while intended solely for Mr. Hartford, struck his home. This caused damage to the property and posed a legitimate risk of harm to his parents.

It was the trial court's intent to sentence both Defendants to the maximum; however, after considering the mitigating evidence, it opted to sentence them to less than the maximum. A review of the record reveals that the trial court considered all relevant information prior to sentencing Defendants to eight years.

In *State v. Lafleur*, 16-467 (La.App. 3 Cir. 1/4/17), 209 So.3d 927, *writ denied*, 17-808 (La. 1/29/18), 235 So.3d 1104, the defendant approached the victim's truck and pointed a rifle at him. The defendant eventually lowered the weapon and walked away. Defendant was sentenced to the maximum sentence of ten years. On appeal, the defendant alleged that the trial court neglected to consider his mental illness as a mitigating factor and that the trial court's sentence was based upon defendant's poor behavior in court rather than the facts of the offense. This court vacated the sentence and remanded for resentencing. After considering defendant's mental health, the trial court resentenced him to ten years at hard labor, with three of those years suspended. The new sentence was affirmed on appeal.

In *State v. Brown*, 17-124 (La.App. 4 Cir. 12/12/17), 234 So.3d 978, *writ denied,* 18-10 (La. 6/15/18), 257 So.3d 678, a check given to the victim by the defendant bounced. When the victim confronted the defendant, the defendant pulled a gun on the victim, placed it against his side, and told the victim he had killed two or three people. The defendant never fired the weapon, and no injuries resulted from the defendant's brandishing of the weapon. However, the fourth circuit affirmed the trial court's imposition of the maximum fine of $10,000 and the mid-range sentence of five years at hard labor.

These cases support the trial court's sentencing in this matter. In neither *Lafleur* nor *Brown* did the defendant fire his weapon at the victim, yet sentences ranging from five years to the maximum were upheld. Defendants herein both fired weapons at Mr. Hartfield. These assignments of error lack merit.

13

**DECREE**

The conviction of Ronald Watson is affirmed. The sentences of Ronald Watson and Stephen Watson are affirmed.

**CONVICTION AFFIRMED. SENTENCES AFFIRMED.**